UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

BETTY LEE FRENZEL,          )
                                    )
        Plaintiff,           )
                                    )
        vs.                   )   Case No. 4:15 CV 650 ACL
                                    )
CAROLYN W. COLVIN,       )
Acting Commissioner of Social Security,  )
                                    )
        Defendant.      )

## MEMORANDUM AND ORDER

Plaintiff Betty Lee Frenzel brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of her application for Child Insurance Benefits under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Act.

An Administrative Law Judge ("ALJ") found that, despite Frenzel's multiple severe impairments, she was not disabled as she had the residual functional capacity ("RFC") to perform jobs that exist in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

### I. Procedural History

On October 21, 2010, Frenzel filed applications for Child's Insurance Benefits[1] and SSI,

_____

[1]Frenzel was eighteen when she filed her application. Social Security regulations provide for the payment of disabled child's insurance benefits if the claimant is eighteen years old or older and has

claiming that she became disabled on January 1, 2004. (Tr. 204-09.) Frenzel's claims were denied initially. (Tr. 108-17.) Following an administrative hearing, Frenzel's claims were denied in a written opinion by an ALJ, dated October 31, 2013. (Tr. 23-38.) Frenzel then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration (SSA), which was denied on February 19, 2015. (Tr. 3-6.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In the instant action, Frenzel claims that the ALJ erred in that he "gave little weight to the only evidence related to Frenzel's mental functioning abilities and disregarded evidence which supported further limitations." (Doc. 13 at 1.)

## II. The ALJ's Determination

The ALJ stated that Frenzel was born on November 11, 1991, and had not attained age twenty-two as of January 1, 2004, the alleged onset date. (Tr. 28.) The ALJ found that Frenzel had not engaged in substantial gainful activity since her alleged onset date. *Id.*

In addition, the ALJ concluded that Frenzel had the following severe impairments: bipolar disorder; major depressive disorder; mood disorder; post-traumatic stress disorder (PTSD); generalized anxiety disorder; personality disorder with borderline features; right carpal tunnel syndrome; and mild generative disc disease of the lumbar spine. *Id.* The ALJ found that Frenzel did not have an impairment or combination of impairments that meets or equals in severity the requirements of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 29.)

As to Frenzel's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned
> finds that the claimant has the residual functional capacity to lift 50

a disability that began before attaining age twenty-two. *See* 20 C.F.R. § 404.350(a)(5).

pounds occasionally and 25 pounds frequently; can stand and/or walk about 6 hours out of an 8 hour workday, with normal breaks; can sit for about 8 hours out of an 8 hour workday, with normal breaks; and push and/or pull to same weights. She is able to frequently bend, kneel, stoop, crawl, or crouch. She is frequently able to walk on uneven terrain, as well as climb ladders and work at heights. She is able to frequently perform fine manipulation with the right, upper extremity. She is limited to simple and routine tasks, consisting of one to two step instructions. She is limited to occasional, superficial, non-confrontational, and non-negotiation types of interactions with co-workers and supervisors. She is limited to work that does not involve team effort in making decision, developing goals or priorities, building consensus, or negotiating outcomes. She is not able to work with the general public.

(Tr. 31-32.)

The ALJ found that Frenzel's allegations regarding her limitations were not entirely credible. (Tr. 32-33.) In determining Frenzel's mental RFC,[2] the ALJ indicated that he was assigning "great weight" to the opinion of state agency consultant W. Nordbock, Ph.D. (Tr. 34.) He stated that he was giving "little weight" to the opinion of Frenzel's counselor, Laura Swalley, because Ms. Swalley is not an acceptable medical source and her opinion is not consistent with the evidence of record. (Tr. 34.)

The ALJ further found that Frenzel has no past relevant work. (Tr. 37.) The ALJ noted that a vocational expert testified that Frenzel could perform jobs existing in significant numbers in the national economy, such as farm worker, laundry laborer, and skin lifter. (Tr. 37-38.) The ALJ therefore concluded that Frenzel has not been under a disability, as defined in the Social Security Act, from January 1, 2004, through the date of the decision. (Tr. 38.)

---

[2]Frenzel does not challenge the ALJ's findings with regard to her physical RFC. The undersigned will, therefore, limit the discussion to Frenzel's mental impairments.

The ALJ's final decision reads as follows:

> Based on the application for child's insurance benefits filed on October 21, 2010, the claimant is not disabled as defined in section 223(d) of the Social Security Act through the date of this decision.
>
> Based on the application for supplemental security income protectively field on September 28, 2010, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

(Tr. 38.)

## III.  Applicable Law

### III.A.  Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).  Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion.  *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).  This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings."  *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted).  "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis."  *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1.    The credibility findings made by the ALJ.

2.    The plaintiff's vocational factors.

3.    The medical evidence from treating and consulting physicians.

4.       The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5.       Any corroboration by third parties of the plaintiff's impairments.

6.       The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted).   The Court must also consider any evidence which fairly detracts from the Commissioner's decision.   *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999).   However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole.   *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)).   "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision."   *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted).   *See also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

**III.B.   Determination of Disability**

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905.   A claimant has a disability when the claimant is "not only unable to do his previous work but cannot,

considering his age, education and work experience engage in any other kind of substantial gainful work which exists … in significant numbers either in the region where such individual lives or in several regions of the country."   42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations.   20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).   First, the Commissioner will consider a claimant's work activity.   If the claimant is engaged in substantial gainful activity, then the claimant is not disabled.   20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities."   *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003).   "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."   20 C.F.R. § 416.921(b).   These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.   *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S.Ct. 2287, 2291 (1987).   "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact

on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to

perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a. The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists. *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). The Commissioner must then rate the degree of functional loss resulting from the impairments in four areas deemed essential to work: activities of daily living, social functioning, concentration, and persistence or pace. *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related

activities. *See id.* Next, the Commissioner must determine the severity of the impairment based on those ratings. *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c). If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder. *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders. *See id.* If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

## IV. Discussion

Frenzel argues that the ALJ erred in discounting the opinion of her counselor, Ms. Swalley, and relying on the opinion of a non-examining consultant when determining Frenzel's mental RFC. Frenzel also contends that the ALJ did not consider new evidence submitted after the hearing that supported further limitations.

Residual functional capacity is defined as that which a person remains able to do despite her limitations. 20 C.F.R. § 404.1545(a), *Lauer v. Apfel,* 245 F.3d 700, 703 (8th Cir. 2001). The ALJ must assess a claimant's RFC based upon all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of her symptoms and limitations. 20 C.F.R. § 404.1545(a); *Anderson v. Shalala,* 51 F.3d 777, 779 (8th Cir. 1995); *Goff v. Barnhart,* 421 F.3d 785, 793 (8th Cir. 2005). A claimant's RFC is a medical question, and there must be some medical evidence, along with other relevant, credible evidence in the record, to support the ALJ's RFC determination. *Id.; Hutsell v. Massanari,* 259 F.3d 707, 711–12 (8th Cir. 2001); *Lauer,* 245 F.3d at 703–04; *McKinney v. Apfel,* 228 F.3d 860, 863 (8th Cir. 2000). An ALJ's RFC assessment which is not properly informed and

supported by some medical evidence in the record cannot stand.   *Hutsell,* 259 F.3d at 712.

However, although an ALJ must determine the claimant's RFC based upon all relevant evidence,

the ALJ is not required to produce evidence and affirmatively prove that a claimant is able to

perform certain functions.   *Pearsall,* 274 F.3d at 1217 (8th Cir. 2001); *McKinney,* 228 F.3d at

863.   The claimant bears the burden of establishing her RFC.   *Goff,* 421 F.3d at 790.

    In determining Frenzel's mental RFC, the ALJ first summarized the objective medical

evidence.   The ALJ acknowledged that Frenzel had been hospitalized for five days due to her

mental symptoms in January 2011.   (Tr. 33, 336-37.)   The ALJ also acknowledged that Frenzel

had failing grades in high school, and that subsequent IQ testing revealed she functions in the low

average intellectual range.   (Tr. 33.)

    With regard to Frenzel's January 2011 hospitalization, the record reveals that she was

admitted on an involuntary hold, after she verbalized thoughts of suicide and homicide.   (Tr. 336.)

She reported that she wanted to hang herself and cut herself, and stated that she had tried to

strangle her boyfriend.   *Id.*   It was noted that Frenzel had a history of violent and aggressive

behaviors, and that she had assaulted her father seven to eight months prior, and had assaulted her

younger brother one year prior.   *Id.*   Frenzel had taken numerous psychotropic medications in the

past, but stopped taking her medications a few months prior to her hospitalization.   *Id.*   Frenzel

was treated and monitored by Psychiatry for medication management during her hospitalization.

*Id.*   Upon discharge, she was diagnosed with bipolar disorder, with a GAF score of 52.[3]   *Id.*   She

---

[3]A GAF score of 51 to 60 denotes "[m]oderate symptoms (e.g., flat affect and circumstantial
speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school
functioning (e.g., few friends, conflicts with peers or co-workers)."   *See American Psychiatric
Ass'n, Diagnostic and Statistical Manual of Mental Disorders* 34 (Text Revision 4th ed. 2000)
("*DSM IV-TR*").

was prescribed Abilify[4] and Depakote,[5] and was instructed to follow-up with a counselor.   (Tr. 337.)   The ALJ stated that, the fact that Frenzel has not been hospitalized since generally suggests that her mental condition has stabilized, despite the fact that she has been non-compliant with her prescription medication.   (Tr. 33.)

The ALJ noted that state agency evaluator W. Nordbock, Ph.D., reviewed the record in March 2011, and expressed the opinion that Frenzel had mild limitations in her activities of daily living, and moderate limitations in social functioning and concentration.   (Tr. 625-39.)   Dr. Nordbock found that Frenzel was capable of performing simple one-to-two-step tasks, with adequate pace and persistence, and without excessive supervision "despite having a severe but fluctuant" disorder.   (Tr. 628.)   Dr. Nordbock's opinion was affirmed by other state agency consultants on April 7, 2011 (Tr. 357-58), and April 30, 2012 (Tr. 573-74).   The ALJ assigned "great weight" to Dr. Nordbock's opinions, finding that they were consistent with the evidence that Frenzel has been capable of taking GED classes.   (Tr. 34.)   The ALJ found that, due to Frenzel's "violent history" she has additional social limitations.   *Id.*

Frenzel participated in outpatient counseling from August 2011 through November 2011. (Tr. 34, 406-38.)   The ALJ accurately noted that treatment notes reveal Frenzel had suicidal and homicidal ideations, a disheveled appearance, was aggressive and withdrawn, her eye contact was poor, her mood and affect were angry and irritable, and her insight and judgment were poor.   *Id.* Frenzel was diagnosed with bipolar disorder and PTSD, and was assessed GAF scores ranging from 20 to 35.[6]   (Tr. 422-39.)   On November 4, 2011, Frenzel reported that she had tried to

---

[4]Abilify is an antipsychotic drug indicated for the treatment of schizophrenia.   *See Physician's Desk Reference ("PDR")*, 1918 (70th Ed. 2016).
[5]Depakote is indicated for the treatment of manic or mixed episodes associated with bipolar disorder with or without psychotic features.   *See PDR* at 429.
[6]A GAF score of 11 to 20 indicates some danger of hurting self or others (*e.g.*, suicide attempts

strangle her boyfriend the day prior. (Tr. 421.) Upon examination, she was depressed, anxious, had a flat affect, and disheveled appearance, and was exhibiting homicidal thoughts and poor judgment. (Tr. 422.) She was assessed a GAF score of 20. *Id.*

Frenzel attended counseling at Pathways Community Behavioral Health from December 2011 through April 2012. (Tr. 34, 470-82, 568-72.) The ALJ summarized these records by noting that Frenzel was non-complaint with regard to her prescription medications and admitted that she did not like to take her medications. (Tr. 34.) These records also reveal the findings discussed below. In December 2011, Frenzel was noted to be eight weeks pregnant. (Tr. 470.) She reported anger problems, and stated that she has strangled her ex-boyfriend two to three times. *Id.* Frenzel reported that she had experienced suicidal and homicidal thoughts in the past. *Id.* She stated that she screams, curses, and swings at people when she is frustrated. *Id.* Jonathan Rosenboom, Psy.D., diagnosed Frenzel with bipolar disorder, with a GAF score of 55. (Tr. 473.) On January 19, 2012, it was noted that Frenzel requested another therapist because she did not like the premise that only she was responsible for changing her negative emotional states, and wished to continue to blame others for her depression and anxiety. (Tr. 476.) On February 3, 2012, Frenzel saw counselor Laura Swalley, LPC, MS. (Tr. 480.) Ms. Swalley noted that Frenzel was alert, had good eye contact, appeared younger and talked with an immature demeanor, and seemed shy. (Tr. 480.) Frenzel was not taking any medication and had not for "some time." *Id.*

---

without clear expectation of death, frequently violent, manic excitement); occasionally fails to maintain minimal personal hygiene (*e.g.*, smears feces); or gross impairment in communication (*e.g.*, largely incoherent or mute). A score of 21 to 30 denotes behavior that is considerably influenced by delusions of hallucinations; or serious impairment in communication or judgment (*e.g.*, sometimes incoherent, acts grossly inappropriately, suicidal preoccupation); or inability to function in almost all areas (*e.g.*, stays in bed all day; no job, home or friends). Finally, a GAF score between 31 and 40 indicates some impairment in reality testing or communication (*e.g.,* some speech is at times illogical, obscure, or irrelevant); or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (*e.g.,* depressed person avoid friends, neglects family, and is unable to work). *See DSM IV-TR* at 34.

Frenzel reported experiencing homicidal thoughts in the past which led to her trying to strangle her boyfriend. *Id.* She reported mood swings and anger management issues. *Id.* Frenzel saw Shree Shrestha, M.D., at Pathways on February 27, 2012. (Tr. 481-82.) Frenzel reported experiencing panic attacks that she described as being like seizures. (Tr. 481.) She also reported seeing shadows. *Id.* Upon examination, Frenzel was dressed appropriately, made good eye contact, was cooperative and open, her intelligence was average, her mood was okay, her affect was appropriate, her flow of thought was logical and goal directed, her insight and judgment were fair, her memory was intact, and her attention span was good. (Tr. 482.) Dr. Shrestha diagnosed Frenzel with bipolar disorder type I, depressed phase currently; generalized anxiety disorder; alcohol and cannabis abuse by history; and a GAF score of 50. *Id.* Frenzel saw Ms. Swalley on March 27, 2012 for therapy. (Tr. 571.) Frenzel reported problems with seeing shadows and thinking that others were talking about her. *Id.* Frenzel was alert, oriented, well-groomed, and talkative. *Id.* She reported that she was starting GED classes. *Id.* Ms. Swalley discussed ways for Frenzel to manage her feelings of paranoia. *Id.*

Frenzel saw Mark Bradford, Psy.D., for a psychological evaluation on October 24, 2012, at the request of Pulaski County Courts. (Tr. 609-22.) Frenzel's infant son had been removed from her and placed in DFS custody at ten days old because his leg was broken. (Tr. 610.) Frenzel suggested that her child's leg may have been broken during childbirth. *Id.* Upon examination, Frenzel's affect and demeanor were "rather numbed, depressive," her speech was clear and logical, she was oriented in all spheres, her hygiene was good, she was pleasant and cooperative, and she was slow at times in processing information and questions. *Id.* Frenzel reported that she was hearing voices of people talking about her and seeing shadows, she had mood swings, she had had suicidal thoughts, and she experienced panic attacks that were like seizures. (Tr. 612-13.)

Frenzel underwent intelligence testing, which revealed a below average range of intellectual ability. (Tr. 615.) She reported that she dropped out of school at the beginning of eleventh grade due to anger problems. (Tr. 611.) Frenzel was in the special education program when she was in school. *Id.* Dr. Bradford diagnosed Frenzel with rule out bipolar disorder with paranoid/ psychotic features, rule out pseudo seizures, mood disorder not otherwise specified, personality disorder not otherwise specified with borderline features, and a current GAF score of 61. (Tr. 618-19.) Dr. Bradford stated that Frenzel presented with a history of "moodiness and irresponsibility," she likely had a mood disorder, and had a history of some depression, the extent of which was unknown. (Tr. 619.) He indicated that there was a question of how severe her condition was and whether she was exaggerating. *Id.* Dr. Bradford stated that one possibility is that Frenzel has an emerging bipolar disorder with psychotic features, which results in poorly controlled anger, impulsivity, lack of awareness of others, and was probably disabling. *Id.* Dr. Bradford indicated that a second possibility was that Frenzel has a mood disorder of some type and depression, but she has not yet "grown up and she is just irresponsible." *Id.* He stated that those who take this position would feel Frenzel "does not want to 'settle down' or work, she wants to exaggerate various physical symptoms to get disability." *Id.* Dr. Bradford stated that both of these possibilities raise questions about Frenzel's ability to care for a child. *Id.* Dr. Bradford's recommendations included therapy, medication, further evaluation of medical issues, and parenting classes. (Tr. 619-20.)

Ms. Swalley completed a Mental Residual Functional Capacity Assessment Form on December 11, 2012. (Tr. 604-08.) Ms. Swalley expressed the opinion that Frenzel had an extreme limitation in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an

unreasonable number and length of rest periods.   (Tr. 606.)   She found Frenzel had marked limitations in her ability to cope with stress, behave in an emotionally stable manner, accept instructions and respond to criticism, understand and remember detailed instructions, understand and carry out complex instructions, and maintain attention and concentration for extended periods. (Tr. 605-06.)   Ms. Swalley also found Frenzel had moderate limitations in her ability to function independently, relate in social situations, reliability, interact with the general public, maintain socially acceptable behavior and adhere to basic standards of cleanliness, maintain regular attendance and be punctual, work in coordination with others, and make simple work-related decisions.   *Id.*   As support for these findings, Ms. Swalley indicated that Frenzel was diagnosed with bipolar disorder, most recent episode depressed; generalized anxiety disorder; and had past hospitalizations for suicidal thoughts and plans.   (Tr. 605.)   Ms. Swalley stated that Frenzel reports she has not worked, has problems with anger management, and gets nervous and upset easily.   (Tr. 607.)   Ms. Swalley further stated that Frenzel has difficulty responding to stress and coping with interpersonal conflicts.   (Tr. 608.)   She noted that Frenzel was learning anger management skills and coping with stress, as well as taking medication for bipolar disorder.   *Id.*

The ALJ discussed Ms. Swalley's opinion.   (Tr. 34-35.)   The ALJ noted that Ms. Swalley is not an acceptable medial source.   (Tr. 34.)   The ALJ further found that that Ms. Swalley's opinion was not consistent with evidence of record that reflects that Frenzel has been capable of taking GED classes and has maintained meaningful relationships.   *Id.*   Finally, the ALJ stated that Frenzel's mental status examinations in 2013 have typically been unremarkable.   (Tr. 35-36.) For these reasons, the ALJ indicated he was assigning "little weight" to Ms. Swalley's opinion, "as her findings appear to be overstated."   (Tr. 35.)

Frenzel argues that the ALJ erred in discrediting Ms. Swalley's opinion.   "'It is the ALJ's

function to resolve conflicts among the various treating and examining physicians." *Tindell v. Barnhart,* 444 F.3d 1002, 1005 (8th Cir. 2006) (quoting *Vandenboom v. Barnhart,* 421 F.3d 745, 749–50 (8th Cir. 2005) (internal marks omitted)). The opinion of a treating physician will be given "controlling weight" only if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." *Prosch v. Apfel,* 201 F.3d 1010, 1012–13 (8th Cir. 2000). The record, though, should be "evaluated as a whole." *Id.* at 1013 (quoting *Bentley v. Shalala,* 52 F.3d 784, 785–86 (8th Cir. 1997)). The ALJ is not required to rely on one doctor's opinion entirely or chose between the opinions. *Martise v. Astrue,* 641 F .3d 909, 927 (8th Cir. 2011). Additionally, when a physician's records provide no elaboration and are "conclusory checkbox" forms, the opinion can be of little evidentiary value. *See Anderson v. Astrue,* 696 F.3d 790, 794 (8th Cir. 2012). Regardless of the decision the ALJ must still provide "good reasons" for the weight assigned the treating physician's opinion. 20 C.F.R § 404.1527(d)(2).

The ALJ must weigh each opinion by considering the following factors: the examining and treatment relationship between the claimant and the medical source, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, whether the physician provides support for his findings, whether other evidence in the record is consistent with the physician's findings, and the physician's area of specialty. 20 C.F.R. §§ 404.1527(c)(1)-(5), 416 .927(c)(1)-(5).

The ALJ accurately noted that Ms. Swalley was a therapist with a master's degree, and was therefore not an "acceptable medical source" as such is defined in the Regulations. 20 C.F.R. §§ 404.1513(a), 416.913(a). The Regulations provide that evidence to establish disability must come from "acceptable medical sources," which are defined as licensed medical or osteopathic

physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. §§ 404.1513(a)(1)-(5), 416.913(a)(1)-(5). Therapists, like Ms. Swalley, are specifically defined elsewhere in the Regulations as "other sources" whose opinions may help understand how a claimant's impairments affect her ability to work. 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1).

The ALJ next found that Ms. Swalley's opinions were inconsistent with the evidence of record. As support for this finding, the ALJ stated that Frenzel has been capable of taking GED classes and has maintained meaningful relationships; and stated that Frenzel's mental status examinations in 2013 have typically been unremarkable. (Tr. 34-35.) These findings are not supported by the record.

At the administrative hearing, Frenzel testified that she had taken GED preparation classes in March 2012. (Tr. 51.) Frenzel testified that she did not finish the class, nor did she ever take the GED test. (Tr. 52-53.) Frenzel stated that she stopped taking the class because she was pregnant and had back pain, and because she had difficulty with understanding the material and with concentration. (Tr. 52.) Frenzel's attempt at taking GED classes is not inconsistent with Ms. Swalley's opinion that she has marked limitations in understanding and in concentration.

The ALJ next found that Frenzel had "meaningful relationships." (Tr. 34.) The ALJ is presumably referring to Frenzel's relationship with her current boyfriend and her family. (Tr. 30.) The record, however, reveals that Frenzel has been involved in multiple incidents of violence with her boyfriend and family members, including choking her boyfriend on several occasions, harming her younger sister, and kicking her father. (Tr. 84, 336.) The record does not support the ALJ's finding that Frenzel has meaningful relationships.

Finally, the ALJ found that Frenzel's mental status examinations in 2013 were unremarkable. The ALJ first cited to records from a neurologist Frenzel saw for complaints of seizures, hand and leg numbness, and back pain. (Tr. 35, 655-56.) Upon neurological examination, it was noted that Frenzel was alert, oriented, and her comprehension was intact. *Id.* Frenzel's diagnoses included depression. *Id.* The neurologist, however, was not treating Frenzel's mental impairments. As such, the fact that the neurologist did not note additional mental symptoms does not detract from Ms. Swalley's opinion. The ALJ also cited records from Pathways dated September 2013, reflecting that Frenzel was well dressed, made good eye contact, seemed focused, had a generally normal affect, moderate concentration, and adequate judgment. (Tr. 35, 641.) It was also noted that Frenzel appeared confused and reported irritability, mood fluctuations, and increased anxiety and depression. (Tr. 640.) She was diagnosed with bipolar II disorder and was assessed a GAF score of 50. (Tr. 642.) Frenzel was continued on Seroquel[7] and Zoloft.[8] These records are not inconsistent with Ms. Swalley's findings.

The reasons provided by the ALJ for discrediting Ms. Swalley's opinion are factually inaccurate. Although Ms. Swalley is not an acceptable medical source, her opinions should have been properly considered as aids to understanding how Frenzel's impairments affected her ability to work.

The ALJ made the following determination regarding Frenzel's mental RFC:

> She is limited to simple and routine tasks, consisting of one to two
> step instructions. She is limited to occasional, superficial,
> non-confrontational, and non-negotiation types of interactions with
> co-workers and supervisors. She is limited to work that does not

---

[7]Seroquel is an anti-psychotic drug indicated for the treatment of schizophrenia and bipolar disorder. *See* WebMD, http://www.webmd.com/drugs (last visited August 1, 2016).
[8]Zoloft is an antidepressant drug indicated for the treatment of depression, panic attacks, and PTSD. *See* WebMD, http://www.webmd.com/drugs (last visited August 1, 2016).

> involve team effort in making decisions, developing goals or
> priorities, building consensus, or negotiating outcomes. She is not
> able to work with the general public.

(Tr. 31-32.)

As support for this determination, the ALJ stated that Frenzel's "generally unremarkable mental status examinations in 2013 suggest her mental condition has stabilized with treatment and medication." (Tr. 35.) The ALJ found that Frenzel had difficulty in social functioning due to her history of violent behavior, and indicated that the social limitations imposed accounted for these difficulties. *Id.* He also discussed Frenzel's low GAF scores, but assigned them limited weight because the "overall record illustrates a higher level of functioning than what is suggested by these isolated snapshots." *Id.*

The mental RFC formulated by the ALJ is not supported by substantial evidence. The only evidence supporting the ALJ's determination is the opinion of the non-examining state agency consultant, Dr. Nordbock.

Opinions of non-treating, non-examining sources ordinarily do not constitute substantial evidence on the record as a whole and are generally accorded less weight than opinions from examining sources. *Vossen v. Astrue,* 612 F.3d 1011, 1016 (8th Cir. 2010); *Wildman v. Astrue,* 596 F.3d 959, 967 (8th Cir. 2010). This is especially true when evidence contrary to the non-examining source's opinion exists in the record. *See Davis v. Schweiker,* 671 F.2d 1187, 1189 (8th Cir. 1982). When evaluating the opinion of a non-examining source, the ALJ must evaluate the degree to which the opinion considers all of the pertinent evidence, including opinions of treating and other examining sources. *Wildman,* 596 F.3d at 967; 20 C.F.R. § 404.1527(d)(3) (2011). In addition, where the non-examining source did not have access to relevant medical records, the opinion is accorded less weight. *See McCoy v. Astrue,* 648 F.3d 605, 616 (8th Cir.

2011).

As noted by Frenzel, at the time Dr. Nordbock rendered his opinion in March 2011, he did not have available to him the records from the counseling Frenzel underwent from August 2011 through April 2012, Ms. Swalley's opinion evidence, or Dr. Bradford's consultative examination.[9] These records reveal Frenzel received additional psychiatric treatment, frequent counseling sessions, continual prescriptions for and adjustments to psychotropic medications, and continued symptoms. Because Dr. Nordbock did not have access to these relevant records when he rendered his opinion, the opinion of this non-examining consultant is entitled to less weight. *McCoy*, 648 F.3d at 616. To accord great weight to Dr. Nordbock's opinion evidence in these circumstances was error. *See Wildman,* 596 F.3d at 967; *Davis,* 671 F.2d at 1189.

In addition, neither Dr. Nordbock nor the ALJ had evidence from Paul W. Iles, Psy.D, or Brenda J. Fricke, Licensed Professional Counselor, submitted by Frenzel after the hearing. Frenzel presented to Dr. Iles on August 21, 2013, for a psychological evaluation at the request of her therapist, Ms. Fricke. (Tr. 663-73.) Dr. Iles diagnosed Frenzel with bipolar I disorder; generalized anxiety disorder; alcohol dependence; learning disorder; personality disorder not otherwise specified with paranoid, histrionic, and borderline personality disorder traits; and assessed a GAF score of 46.[10] (Tr. 672.) Dr. Iles stated that Frenzel is a "moody individual who exhibits poor judgment, poor frustration tolerance, poor anger control, and poor impulse control." (Tr. 670.) He stated that Frenzel has problems with authority figures, engages in oppositional

---

[9]As previously noted, a different state agency consultant, James Spence, Ph.D., reviewed the record and affirmed Dr. Nordbock's opinion in April 2012. (Tr. 573-74.) Dr. Spence did have available to him the counseling records up to that date, but, significantly, did not have available Dr. Bradford's consultative examination or Ms. Swalley's opinion.

[10]A GAF score of 41 to 50 denotes "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *See DSM IV-TR* at 34.

defiant behaviors and aggressive behaviors, is sneaky and manipulative, projects blame on others, and lacks insight into her own psychological functioning.   (Tr. 670-71.)   Dr. Iles noted that Frenzel exhibits mood lability, a low threshold for anxiety, and experiences auditory and visual hallucinations.   (Tr. 671.)   Frenzel experienced generalized anxiety on almost a daily basis, and was uncomfortable in social situations.   *Id.*   Dr. Iles' recommendations included individual supportive therapy, cognitive behavioral therapy, and medication management.   (Tr. 672.)

Ms. Fricke authored a letter dated October 21, 2013, in which she stated that she had been treating Frenzel for six months with limited success.   (Tr. 662.)   She stated that Frenzel has high levels of anxiety, obsessive compulsive disorder, paranoid features, and borderline personality disorder traits.   *Id.*   Ms. Fricke stated that Frenzel's conditions "affect her socially, economically and vocationally to the level that she is very limited [i]n her abilities on a daily basis."   *Id.*

This evidence was submitted to the SSA on October 23, 2013—after the October 3, 2013, administrative hearing, but prior to the ALJ's October 31, 2013 decision.   (Tr. 661.)   The evidence was exhibited as 38F.   In his decision, the ALJ indicated that he had received documents post-hearing, which were exhibited as 35F to 37F, and that he had considered this evidence in making his determination.   (Tr. 26.)   He did not refer to Exhibit 38F.   Defendant indicates that the ALJ did not receive this evidence before issuing his decision.[11]

The Appeals Council did not discuss the records of Dr. Iles or Ms. Fricke.   When a plaintiff presents new evidence to the Appeals Council, the regulations provide that the Appeals

---

[11]Defendant also notes that this evidence was submitted after the fourteen-day period during which the ALJ left the record open following the hearing.   (Doc. 16 at 12.)   The fourteen-day period expired on October 17, 2013.   The other evidence submitted post-hearing, however, was also submitted after the fourteen-day period—on October 21, 2013.   This did not preclude the ALJ from considering the evidence.   In view of this fact and the fact that the ALJ acknowledged at the hearing that updated medical records were missing from the record, there is no reason to believe the ALJ would not have considered this evidence had it been available to him at the time he made his decision.

Council must evaluate the entire record, including any new and material evidence that relates to the period before the date of the ALJ's decision. 20 C.F.R. § 404.970(b); *Cunningham v. Apfel*, 222 F.3d 496, 500 (8th Cir. 2000). "To be 'new,' evidence must be more than merely cumulative of other evidence in the record." *Bergmann v. Apfel*, 207 F.3d 1065, 1069 (8th Cir. 2000). "To be 'material,' the evidence must be relevant to the claimant's condition for the time period for which benefits were denied." *Id.* The newly submitted evidence becomes part of the administrative record, even though the evidence was not originally included in the ALJ's record. *Id.* This Court does not review the Appeal's Council's denial, but determines whether the record as a whole, including the new evidence, supports the ALJ's determination. *Id.* The records in the instant case related to the relevant time period, as they were dated prior to the ALJ's decision. In addition, the records are not cumulative.

When the entire record is considered, including the records of Dr. Iles and Ms. Fricke, the undersigned finds that the mental RFC formulated by the ALJ is not supported by substantial evidence. The ALJ's ultimate finding that Frenzel's "generally unremarkable mental status examinations in 2013 suggest that her mental condition has stabilized" is directly refuted by the records of Dr. Iles and Ms. Fricke. These records reveal that Frenzel continued to experience significant psychiatric symptomatology, including mood lability, anxiety, paranoia, auditory and visual hallucinations, poor judgment, poor frustration tolerance, poor anger control, and poor impulse control. (Tr. 662, 670-71.) Frenzel's most recent GAF score assigned by Dr. Iles was 46, which is indicative of serious symptoms and serious impairment in occupational functioning. (Tr. 672.) This is consistent with other medical evidence of record, which revealed GAF scores routinely in the range of 20 to 50. Although GAF scores do not have a direct correlation to SSA severity requirements, they may be considered in reviewing an ALJ's determination that a treating

source's opinion was inconsistent with the treatment record. *Myers v. Colvin*, 721 F.3d 521, 525 (8th Cir. 2013). The ALJ discredited Frenzel's GAF scores, finding the record demonstrated a higher level of functioning. As discussed above, however, the record reveals significant psychiatric symptoms consistent with the low GAF scores Frenzel was routinely assigned.

In sum, the ALJ relied on factual inaccuracies in discrediting the opinion of Frenzel's therapist, Ms. Swalley, regarding Frenzel's limitations. The ALJ then assigned great weight to the opinion of a non-examining state agency consultant who did not have the benefit of the majority of the medical evidence. The ALJ did not have the records of Dr. Iles or Ms. Fricke available to him when he made his decision. When these records are considered with the other evidence of record, the ALJ's finding that Frenzel's mental condition stabilized in 2013 is not supported by the record. The ALJ's mental RFC was based on this erroneous finding. Thus, the ALJ's mental RFC is not supported by substantial evidence.

## V.   Conclusion

For the reasons discussed above, the Commissioner's decision is not based upon substantial evidence on the record as a whole and the cause is therefore remanded to the Commissioner for further consideration in accordance with this Memorandum and Order. Upon remand, the ALJ shall consider the new evidence from Dr. Iles and Ms. Fricke, along with the other evidence of record, including Ms. Swalley's opinion, and formulate a new mental RFC based on the record as a whole.

**s/** Abbie Crites-Leoni
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 23rd day of September, 2016.